**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Cathy L. Parish,<br>Plaintiff<br>-vs-<br>Commissioner of Social Security Administration,<br>Defendant. | CV-25-2195-PHX-SHD (JFM)<br><br>**Report & Recommendation** |

Plaintiff seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security who denied her disability insurance benefits and supplemental security income disability benefits under the Social Security Act.

This matter is now ripe for consideration. Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(10), Local Rules of Civil Procedure.

## A. SUMMARY OF THE CASE

Plaintiff has asserted that she became disabled as of September 15, 2020, when she was 51, based on a combination of mental and physical impairments. She has past relevant work as a teacher of the learning disabled.

In a decision issued May 24, 2024, the ALJ found Plaintiff generally eligible for benefits given her date last insured, and non-employment. The ALJ found Plaintiff had the following **severe impairments**: post-traumatic stress disorder (PTSD); adjustment disorder; and anxiety disorder. The ALJ also found the following **non-severe impairments**: scoliosis, heart palpitations, seasonal allergies, asthma, frequent urination. The ALJ found no combination of impairments that established disability under the

**listings**. This took into consideration the "paragraph B" criteria for evaluating mental impairments, with the ALJ finding only moderate or mild limitations in each category, and not finding the "paragraph C" criteria met. The ALJ found Plaintiff had the **residual functional capacity** to perform a full range of work at all exertion levels, except she had the following additional limitations:

> she is limited to simple, repetitive tasks. She cannot work in a high-production, assembly-line type of work environment. She can have no more than frequent contact with coworkers, supervisors, and the general public. She cannot work in a loud work environment, which means noise intensity level 4 or greater as defined by the Selected Characteristics of Occupations.

(AR 21.) [1]

Plaintiff argues the ALJ erred in failing to provide legitimate reasons for rejecting Plaintiff's subjective complaints, and founded the decision on pervasive mischaracterizations. In particular, Plaintiff asserts the ALJ:

- failed to provide sufficiently specific reasons, because the conclusions cite to all but 14 pages of the record, much of which related only to physical impairments;
- relied on findings of "appropriate" affect, thought content, appearance and attire;
- relied on activities of daily living not incongruent with Plaintiff's assertions;
- omits qualifications by Plaintiff on admitted capabilities;
- failed to show transferability to the work place; and
- mischaracterized evidence.

Thus, Plaintiff seeks a reversal and remand for further hearing.

Defendant responds the ALJ:

- did not mischaracterize evidence, but simply came to different conclusions;

[1] The Administrative Record (Doc. 9) is referenced herein as "AR", and the labelled Exhibits included in the Administrative Record are referenced herein as "Ex. ___." The briefs are referenced herein as OBr. (Opening Brief, Doc. 14), ABr. (Answering Brief, Doc. 18), and RBr. (Reply Brief, Doc. 19).

- adequately accounted for Plaintiff's limitations in the RFC;
- cited objective evidence of the determined RFC; and
- appropriately relied on Plaintiff's activities.

## B. STANDARDS OF REVIEW

**Reviewed Decision** - In this instance, because the Appeals Council denied review (AR 1), the ALJ's decision is the final decision of the agency, and the decision now under review. 20 C.F.R. § 404.981.

**Bases for Reversal** - The court may set aside the agency's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 567 U.S. 97, 102-103 (2019) (quotations, alterations and citations omitted).

**Limited to ALJ's Reasoning** - In reviewing the ALJ's decision, neither the parties nor the Court can manufacture their own reasons to support the decision made by the ALJ. "We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014); *see also SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts. It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss.").

But in identifying the ALJ's reasons, the Court is not constrained solely by the ALJ's organization of his opinion, and can make reasonable inferences reading the decision as a whole. *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

**C. SYMPTOMS TESTIMONY**

**1. Factual Background**

The ALJ summarized Plaintiff's symptoms testimony as follows:

> The claimant complains of anxiety, panic attacks, excessive worry, depression, mood swings, crying spells, hypersensitivity to external stimuli, hypervigilance, unusual fears, flashbacks, racing thoughts, anhedonia, decreased energy, sleep disturbance, social withdrawal, confusion, cognitive problems, and headache. She allegedly has difficulty remembering information, completing tasks, multitasking, concentrating, maintaining pace, being around people, going outside, and handling work pressure. She allegedly has increased startle response to loud noise. She allegedly needs to rest and use intervention techniques frequently throughout the day. She allegedly experiences bad days often (Exhibits 3E, 5E, 7E, 9E, 11E, 13E, 11F, and hearing testimony).

(AR 22.)

> The claimant alleges headache caused by anxiety and stress (e.g. Exhibit 12E)… The claimant alleges dry mouth from the use of medications (Exhibits 7E, 9E, and 13E).

(AR 23.)

At the hearing, Plaintiff testified to having difficulty with distractions, noise sensitivity, anxiety, difficulty controlling emotions, difficulty concentrating when reading or texting, difficulty with memory, postponing shopping or being with friends and family and attending church online because of elevated symptoms. Plaintiff asserted that because of these symptoms, she was incapable of returning to work. (AR 39-47.)

Plaintiff reports that her mental health symptoms stemmed from an August 2020 episode with an adverse reaction to allergy medication, and was exacerbated by anxiety from working with students during the COVID-19 pandemic. (OBrf. at 3-4; AR 22.)

**2. ALJ's Decision**

The ALJ found:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained below.

(AR 22.) In rejecting Plaintiff's testimony, the ALJ referenced:

- improvement with treatment;
- no hospitalization since September 2020;
- that Plaintiff "generally exhibited appropriate affect, appropriate appearance, appropriate attire, cooperative attitude, appropriate and interactive behavior, full orientation, unremarkable psychomotor activity, fair insight, good judgment and impulse control, adequate memory, adequate attention and concentration, unremarkable thought process, appropriate thought content, and unremarkable perception";
- full score on a Mini Mental Status Exam;
- "appropriate conduct, polite manners, cooperative behavior, appropriate eye contact, good grooming, good hygiene, appropriate attire, normal attention and concentration, good mood, euthymic affect, organized speech, normal thought process, typical insight and judgment, good comprehension, good memory, and average intelligence"; (AR 22)
- medical opinions that Plaintiff's mental symptoms were relatively mild and her prognosis was good;
- "little objective evidence of headache" related impairments;
- limited treatment for headaches;
- Plaintiff's activities of daily living; and
- Plaintiff's performance at the hearing. (AR 23.)

**3. Standard**

Absent evidence of malingering, once an ALJ finds that an impairment could cause the reported symptoms, the ALJ can reject a claimant's symptoms testimony only by

providing specific, clear and convincing reasons for doing so. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) (quoting *Morgan v. Commissioner of the Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir.1999)).

Relevant evidence includes such things as "(1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007).

ADLs can render symptoms testimony not credible in two ways. First, the activities may directly "contradict his other testimony." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Second, the activities may reflect abilities transferrable to the work place. *Id.* However, "[t]he Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities are not easily transferable to what may be the more grueling environment of the workplace." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (citations omitted). Thus, the ALJ must make specific findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007)

**4. Application of Law**

**a. Failure to Cite Specific Records**

Citing the discussion at AR 22 summarized above, Plaintiff asserts the ALJ erred because he failed to provide sufficiently specific reasons, because the conclusions cite to all but 14 pages of the record, much of which related only to physical impairments.

However, the ALJ is not mandated to provide record citations, but rather to provide

reasons. So long as the purported "*facts*" underlying those reasons find support in the record, the ALJ's decision must be sustained. "Thus, it is clear that both this court and the district court may look to any evidence in the record regardless of whether it has been cited by the Appeals Council." *Walker v. Sec'y of Health & Hum. Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). *See also* 4 Soc. Sec. Law & Prac. § 55:67 (2022). Indeed, the reviewing court may reverse "only if the ALJ's decision was not supported by substantial evidence *in the record as a whole*." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (emphasis added).

On the other hand, "[t]hough the ALJ need not address every piece of evidence, he must articulate, at some minimum level, his analysis of the record so that the reviewing court can follow his reasoning." *Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002). "If the reviewing court has no way of evaluating the basis for the ALJ's decision, then 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)). *See also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the *reasons* the ALJ asserts. It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss." (emphasis added)). Thus, a decision supported only by a bare reference to "the record" would justify remand, even if some portion of the record might support the decision, if the decision did not otherwise make clear the ALJ's reasons.

Here, the ALJ may have provided overly broad record *citations*, but the *reasons* asserted by the ALJ for rejecting Plaintiff's symptoms testimony were clear.

Plaintiff cites *Cline v. Comm'r of Soc. Sec. Admin.*, CV-23-00236-PHX-DLR, 2024 WL 4262782, at *2 (D. Ariz. Sept. 23, 2024) for the proposition that general references to large swaths of the record "as a justification for rejecting a medical opinion lacks the required threshold of specificity." (OBrief. at 15.) But in *Cline* Judge Rayes was addressing an ALJ's rejection of a medical opinion where the entire reasoning expressed

by the ALJ was that the doctor "did not 'provide a diagnosis and the greater record does not support the limits.'" *Id.* In contrast, here the ALJ provided a detailed listing of the specific findings on which he was relying to reject Plaintiff's symptoms testimony. Moreover, Judge Rayes was applying the "consistency" component of the standard for evaluating medical opinion, which naturally requires references to "specific portions of the record that conflict with the medical opinion he is evaluating." *Id.* A bare reference to the record without any explanation could not satisfy that standard. With symptoms testimony, however, the standard is for "reasons," which need only be supported by substantial evidence in the record, not specific citations.

Plaintiff shows no error on this issue.

**b. "Appropriate" Presentation Findings**

In rejecting the symptoms testimony, the ALJ opined:

> The treatment records reflect that she sometimes had a dysphoric or anxious mood, a tearful, labile, or frustrated affect...but she generally exhibited appropriate affect, appropriate appearance, appropriate attire, cooperative attitude, appropriate and interactive behavior

(AR 22.)

Plaintiff argues that the ALJ's reliance on findings of "appropriate" affect, thought content, appearance and attire were not convincing reasons because such findings are context based and were based upon her appearance at therapy, not in the work environment. (OBrf. at 16.)

Defendant does not respond.

Evaluating evidence of performances outside the work setting is a context sensitive process. Thus, for example, the appropriateness of activities of daily living is generally contingent upon them being transferrable to the work environment. ." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). And the affect, content, appearance and attire appropriate to a therapy session to address mental health impairments are not obviously transferrable to work. Here, the ALJ made no findings or explanations to explain how

these therapy based evaluations were relevant to a work environment. This was not a specific, clear and convincing reason.

**c. "Adequate" Memory or Concentration**

The ALJ opined:

> The treatment records reflect that she sometimes had…variable attention and concentration, and poor judgment, but she generally exhibited…adequate memory, adequate attention and concentration, unremarkable thought process, appropriate thought content, and unremarkable perception"

(AR 22.)

Plaintiff argues this was error because the record shows her attention was poor at the outset, improved in the summer of 2021, and then declined. (OBrf. at 16-17.)

Defendant responds that the ALJ had earlier in the decision taken notice of records showing periods with recall issues, but that the record contains repeated references to intact memory albeit at times with caveats. And Defendant argues the ALJ observed variable concentration. Defendant further argues that, in any event, the ALJ accounted for memory and concentration issues by limiting her to simple, repetitive tasks, and restricting her from high-production, assembly-line work. Defendant argues that Plaintiff's disagreement with the ALJ's assessment of the other evidence does not render the ALJ's reliance on that assessment unsupported.

Plaintiff replies that Defendant is "moving the goalposts" and is illogical because if Plaintiff's symptoms testimony is believed, then she was disabled.

Defendant, like the ALJ, fails to explain how variable recall and concentration contradicted Plaintiff's symptoms testimony, which did not assert a complete lack of recall or concentration.

The undersigned might be inclined to find any error in addressing the memory and concentration testimony harmless because the ALJ adopted limitations in the RFC addressed to Plaintiff's limitations in these areas. But nothing in the record establishes those restrictions adequately addressed Plaintiff's subjective complaints.

In general, Plaintiff's subjective symptoms testimony consisted mostly of broad statements of symptoms with no descriptors relevant to work impacts, such as specific triggers, or the degree, frequency, and duration of her symptoms. But as discussed hereinafter, the ALJ failed to address these subjective complaints adequately to dismiss them.

**d. Activities of Daily Living**

Plaintiff asserts the ALJ erred by relying on activities of daily living (ADLs) not incongruent with Plaintiff's assertions.

The ALJ reasoned:

> The claimant has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. Despite her mental impairments, she is essentially independent in personal care, is generally able to prepare simple meals, can generally do most light household chores, and has the ability to drive (Exhibits 5E, 7E, 11E, 11F, 12F, and hearing testimony). She routinely drives herself for errands and appointments (Exhibit 11F). In fact, she drove to the mental consultative examination appointment and attended by herself (Exhibit 11F). She is able to pay bills and manage finances (Exhibits 5E, 7E, 11E, and 11F). She helps take care of a pet dog (Exhibits 5E, 7E, and 11E). She can use the internet, shop by computer, and do text messages and video chat (Exhibits 5E, 7E, 11E, and 11F). She reads, plays word-search or jigsaw puzzles, and does scrapbooking on a regular basis (Exhibits 5E, 7E, 11E, and 11F). She generally can follow written and spoken instructions fairly well (Exhibits 5E, 7E, and 11E). She lives with family and spends time with others regularly (Exhibits 5E, 7E, and 11E). She reports having no problem getting along with others or maintaining friendships (Exhibits 5E, 11E, 9F/3, and hearing testimony). She has good relationships with family (Exhibits 9F/3 and 11F). She can shop in stores, go out alone, and eat at restaurants (Exhibits 5E, 7E, 11E, and hearing testimony). She reports little to no difficulty leaving home and, in fact, leaves home on a regular basis (Exhibit 11F). During the adjudicative period, she travelled to Nebraska when her father passed away (hearing testimony); travelling long distance typically requires some mental capacity to plan, prepare, and execute.

(AR 23.)

"Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014).

Plaintiff points to the references to driving a car, personal care, meal preparation, household chores, errands, appointments, managing finances, engaging in hobbies, etc., and asserts the ALJ failed to relate these to the workplace, particularly in consideration of Plaintiff's assertions that she required breaks, took longer to complete tasks, and often had to stop.

Defendant relies on the first basis for rejecting symptoms testimony, arguing that Plaintiff's activities directly contradicted her alleged symptoms. (ABrf. at 7-8.) But Defendant fails to point to any specifically contradicted testimony. Rather, it appears Defendant makes a logical jump from Plaintiff's (limited) testimony of symptoms and assertions she could not work, to an being the equivalent of an assertion by Plaintiff that she was wholly incapacitated. But that was not the nature of Plaintiff's testimony.

Defendant points to the restrictions in the RFC to indicate that Plaintiff's reported levels of impairment were adequately accounted for, and argues that even if the ADLs did not establish ability to work, they did justify a conclusion that her testimony on symptoms was exaggerated. Defendant relies on language from *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009) to suggest that even absent findings of transferability of ADLs to the demands of the workplace, ADLs can be relied on to find assertions of limitations exaggerated. But *Valentine* relied on the claimant's "conclusory argument" that the ALJ's findings were "based largely on factual inaccuracies." *Id.* at 693. Here, however, Plaintiff has directly attacked the justification for relying on the ADLs for being nontransferable.

Here, the ALJ failed to make specific findings relating to the daily activities, the specific symptoms testimony they contradicted, or their transferability, to justify a conclusion Plaintiff's daily activities warranted an adverse credibility determination. *Orn*, 495 F.3d at 639. To be sure, the ALJ identified the activities, but the ALJ did nothing to relate them to the work environment or specific testimony of Plaintiff.

In hindsight, the undersigned has trouble faulting the ALJ in his analysis where Plaintiff's symptoms testimony was so poorly developed. Plaintiff essentially said "I can't work because I sometimes struggle to do some things." As a result, the ALJ's analysis is

equally vague, essentially saying "Plaintiff can do most things as least sometimes." Both sides failed to develop a record to relate Plaintiff's asserted symptoms to her ability to work.

Ordinarily the undersigned would conclude an absence of evidence means the defendant wins. But an ALJ has a duty to fully and fairly develop the record and assure that a claimant's interests are considered." *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 930 (9th Cir. 2014). This duty is heightened when mental impairments are alleged. *Id.* at 930-931. It is true that "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001). Here, however, the record on Plaintiff's symptoms was largely undeveloped insofar as severity and frequency was concerned, and that precluded a proper analysis of how her actual symptoms and activities impacted her ability to work.

Defendant asks this Court to simply assume that the ALJ properly divined these facts and included them in the limited RFC. But this Court must look to the ALJ to explain his decision, and all that is reflected in the record is the ALJ's references to a laundry list of ADLs and a resulting RFC.

The ALJ erred in relying on Plaintiff's activities of daily living.

**5. Harmlessness**

The undersigned has concluded that the ALJ relied on reasons that fail to meet the standard of specific, clear and convincing reasons supported by substantial evidence to reject symptoms testimony.

"A decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Molina*, 674 F.3d at 1115. An error is harmless if it either "occurred during a procedure or step the ALJ was not required to perform," or if it

"was inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). Harmlessness does not require the court to determine what ultimate decisions the ALJ would have made if the error had not been committed, but only to ask whether the remaining bases for the decision are sufficient to support the decision. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

Here, in addition to rejecting Plaintiff's symptoms testimony, the ALJ relied on various medical findings and opinions, including the following:

1. rejecting the mental consulting examiner's apparent restriction to one-to-two step instructions based on results of a MMSE at the examination (AR 24);

2. accepting the rest of the mental consulting examiner's findings (*id.*);

3. rejecting the state agency mental consultants' mental capacity limitations to one-to-two step instructions based on "generally adequate mental functioning" exhibited during exams and on an MMSE (*id.*);

4. rejecting Plaintiff's mental health source's evaluation of "moderate" impairment as too general (AR 24-25).

But none of this addresses the limitations arising from the symptoms identified by Plaintiff when faced with the demands of the workplace. Rather, they were limited to evaluations based on her presentation at office appointments. For example, the ALJ relied heavily on the results of a MMSEs (mini mental status examinations). Such testing reveals only momentary cognitive abilities, it does not address limitations arising from disorders like anxiety and PTSD, such as depression and schizoaffective disorders, *Morris v. Berryhill*, 358 F. Supp. 3d 875, 882-883 (D. Ariz. 2019), "affective, generalized anxiety, and agoraphobia with panic disorders," *Williams v. Comm'r of Soc. Sec. Admin.*, CV-20-00451-PHX-GMS, 2021 WL 389313, at *3 (D. Ariz. Feb. 4, 2021). Similarly, the ALJ's reliance on reports of momentary mental function in exams was unjustified, given the nature of Plaintiff's purported impairments, asserted to be triggered in the rigors of the workplace. *See e.g. Norris v. Comm'r of Soc. Sec. Admin.*, CV-19-8047-PCT-DWL, 2020

WL 1615535, at *4 (D. Ariz. Apr. 2, 2020) (normal cognition findings did not address other Paragraph B criteria).

The ALJ repeatedly cited to Plaintiff's ability to respond to questioning in the hearing. (AR 20.) But again, the ALJ failed to explain how, given the nature of Plaintiff's impairments, performance in a hearing that lasted some 39 minutes, and Plaintiff's testimony was only 10 of 20 pages of transcript. Indeed, less than seven pages (pp. 37-40, 45-47) were examination by the ALJ (rather than Plaintiff's own counsel). The ALJ did not explain how this limited interaction demonstrated the capacity to perform in the workplace given the nature of Plaintiff's situationally triggered mental impairments.

The ALJ also referenced improvement and no recent hospitalizations. (AR 19, 20.) But the ALJ failed to explain how this indicated improvement to a level consistent with the adopted RFC given the asserted impairments.

Under these circumstances, the undersigned cannot find that the errors in rejecting Plaintiff's symptoms testimony were harmless.

## D. RECOMMENDATIONS

**IT IS THEREFORE RECOMMENDED:**

(A) The reference of this case to the undersigned magistrate judge be **WITHDRAWN**.

(B) The final decision of the Commissioner of Social Security be **REVERSED**.

(C) This matter be **REMANDED** to the Commissioner for **REHEARING**.

(D) The Clerk be directed to enter judgment accordingly.

## E. EFFECT OF RECOMMENDATIONS

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within

which to file specific written objections with the Court. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues, *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*), and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

In addition, the parties are cautioned Local Civil Rule 7.2(e)(3) provides that "[u]nless otherwise permitted by the Court, an objection to a Report and Recommendation issued by a Magistrate Judge shall not exceed ten (10) pages."

Dated: August 18, 2026

25-2195r RR 26 07 16 re SSA Appeal.docx

James F. Metcalf
United States Magistrate Judge